jiKLEES, Judge.
Plaintiffs, Brenda Ricci and Irma Hernandez, appeal the amount of damages awarded to them by a jury. After reviewing the record and applicable law, we affirm.
On March 23, 1987, Conrad Meyer was driving lake bound in a light rain on Canal Street at about 5:30 p.m. Soon after passing through the intersection of Canal and Claiborne, Mr. Meyer applied his brakes and slid into Ms. Ricci’s vehicle from the rear. The impact caused Ms. Ricci’s vehicle to hit the car in front of her. According to Ms. Ricci, a second impact with Mr. Meyer’s vehicle followed her contact with the car in front of her. Mr. Meyer testified that he was not speeding and almost avoided the collision entirely. Mr. Meyer had no damage to his vehicle and did not see damage to either the Ricci vehicle or the vehicle in front of Ms. Ricci. Neither police nor ambulance units were called to the scene and everyone except Mr. Meyer, who had a dead battery, was able to continue driving. Ms. Ricci, who was approximately five months pregnant at the time of the accident, carried her baby to term and delivered a healthy boy in early July.
A jury trial was conducted from June 21 through June 24, 1993, and plaintiffs were awarded the following:
Ms. Ricci
Past, present, and future pain and suffering $10,000
Past, present, and future mental anguish $12,500 Past, present, and future medical expenses $40,000 Loss of earning capacity $0
Permanent impairment $12,500
Mental anguish for well being of unborn child (Ms. Ricci was pregnant five months at the time of the accident) $0
Ms. Hernandez (Ms. Ricci’s passenger)
Past, present, and future pain and suffering $15,000
Past, present, and future medical expenses $45,000 Loss of earning capacity $15,000
Permanent impairment $12,500
In this appeal, plaintiffs complain that their awards, except those for medical expenses, are inadequate. We find that the jury acted within its discretion and affirm.
|2Regarding loss of earning capacity, neither plaintiff appears to have reason for complaint. Ms. Ricci’s gross income from 1986 through 1992 refutes the argument that her livelihood as an attorney has been adversely affected by the accident. ‘ The figures for the above years are as follows:
1986 — $106,356
1987 — $110,000 (accident on March 23)
1988 — $106,500
1989 — $122,790
1990 — $101,041
1991 — $ 99,700
1992 — $ 96,400 (See State Farm’s Trial Exhibit # 5 in globo).
Ms. Hernandez, who received $15,000 from the jury for loss of earning capacity, saw her income as Ms. Ricci’s secretary rise following the accident. Ms. Hernandez’s gross income figures for the years 1986 through 1992 are as follows:
*1209 1986 — $18,250
1987 — $18,250 (year of accident)
1988 — $19,550
1989 — $20,550
1990 — $20,176
1991 — $20,200
1992 — $20,200 (See State Farm’s Trial Exhibit # 6 in globo).
Given the above, the jury’s findings regarding loss of earning capacity are affirmed.
In addition to recovering for loss of earning capacity and medical expenses, Ms. Hernandez was awarded $27,500 for her pain, suffering, and permanent impairment. Ms. Ricci was awarded $35,000 for her pain and suffering, mental anguish, and permanent impairment in addition to her reeoveiy for medical expenses. Because the jury was able to evaluate the evidence, including the testimony of the parties and medical witnesses, first hand over a four day period, the jury should be given deference in its issuance of awards.
In the instant case, the jury may not have awarded higher damage amounts for several valid reasons. For instance, both plaintiffs continue to work and do well in them professions. The jury may have reasoned that if the plaintiffs were in debilitating pain which justified greater awards, neither plaintiff would be able to perform their daily tasks so well. Furthermore, the jury may have had difficulty in awarding larger damages for an accident that may be viewed as minor. The jurors heard Mr. Meyer testify that he was not speeding, almost did not hit Ms. Ricci’s ear, and saw no damage to the vehicles involved. Moreover, the jury was aware that the accident was not serious enough for police or ambulance units to be called to the scene.
JjThe medical evidence presented at trial, which is summarized below, may have also raised doubts regarding plaintiffs’ alleged injuries. Regarding Ms. Ricci, the jury was informed that approximately two months before the automobile accident, Ms. Ricci arrived at the Ochsner Foundation Hospital Emergency Room complaining of a slip and fall accident. Following the automobile accident in March, Ms. Ricci did not seek treatment until September 28, 1987, when she complained to Dr. Wilmot F. Ploger of back pain. An examination by Dr. Ploger, who was not informed by Ms. Ricci of her 1987 slip and fall accident, revealed that there was no buttock or leg pain, that the straight leg raising test was normal, and that there was no spasm. Dr. Ploger prescribed a muscle relaxant for Ms. Ricci and examined her again on November 3, 1987.- The November examination produced basically the same results as the first.
Ms. Ricci did not return to Dr. Ploger until June 28, 1988, when she informed the doctor that she had, about two weeks before, suffered a slip and fall accident [we note that this is a different slip and fall accident from that previously mentioned]. On July 11, 1988, at the suggestion of Dr. Ploger, Ms. Ricci underwent an MRI examination at Mercy Hospital. Although evidence of a desiccated disc was found, the test was negative for herniation or nerve root impingement.
On July 20, 1988, Dr. Ploger informed Ms. Ricci that facet injections would possibly afford her some relief, but Ms. Ricci refused such treatment. After further visits to Dr. Ploger in August and December of 1988, Ms. Ricci sought an opinion from Dr. Carlos R. Gorbitz. Ms. Ricci returned to Dr. Ploger on May 16, 1989, and informed him that Dr. Gorbitz concurred regarding the facet injections. Even after consulting with at least one more concurring physician, however, Ms. Ricci still refused the- injections. Ms. Ricci’s last visit with Dr. Ploger was on July 5,1989.
After Dr. Ploger, Ms. Ricci sought treatment with Dr. Vaclav Hamsa. Ms. Ricci first visited Dr. Hamsa on February 9, 1990, almost three years after the accident. Thereafter, Ms. Ricci visited Dr. Hamsa on numerous occasions and underwent more MRI examinations. Dr. Hamsa eventually recommended surgery. Defendants vehemently disagree with Dr. Hamsa’s diagnosis and complain that he uses unorthodox terminology which would not be understood by other physicians.
Uln not awarding Ms. Ricci higher damages, perhaps the jury was troubled by Ms. Ricci’s failure to inform her physician of a previous slip and fall accident. Maybe the jury believed that Ms. Ricci shopped for a physician until she heard what she wanted to hear. Whatever their reasoning, the jury *1210 acted within its discretion and its award was not inadequate.
Regarding Ms. Hernandez’s medical history, sufficient evidence exists to support the jury’s decision. For example, some evidence suggests that the pain in one of Ms. Hernandez’s hands may be the result of disease rather than trauma. Also, Ms. Ricci had spur formations in her back which predated the accident. Given the above, the jury’s award was within their discretion.
We note that State Farm Fire & Casualty Company, as cross appellant, argues that plaintiffs’ claims against them have prescribed. We need not discuss the prescription issue, however, because State Farm is only hable for damages above $300,000 — an amount not reached by the judgment.
For the foregoing reasons, the judgment appealed from is affirmed.

AFFIRMED.